D. Brittain Shaw
DC Bar No. 472990
U.S. Department of Justice
1400 New York Ave., N.W.
Washington, D.C. 20530
202-538-4256
Brittain.Shaw@usdoj.gov
Attorney for *United States of America*

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| United States of America, | 2:19-cr-00448-DLR2 |
|---|---|
| Plaintiff, | |
| v. | **UNITED STATES' MEMORANDUM** |
| James Panther, | **IN AID OF SENTENCING** |
| Defendant. | |

    The United States hereby submits this Sentencing Memorandum regarding Defendant James Panther ("Defendant" or "Panther"). Panther has pleaded guilty for his role in a scheme to manipulate the stock price of a publicly traded company. For his role in this fraud, Defendant has pled guilty to conspiracy to commit securities fraud, in violation of 18 U.S.C. § 1349.

    The United States respectfully requests that the Court: (1) reduce Defendant's Total Offense Level of 29 by 74% to a Total Offense Level 8, with a guideline range of 0-6 months; and

1

(2) impose a three year term of supervised release; (3) an order of restitution jointly and severally with his co-defendants.

## FACTUAL SUMMARY

Francisco Abellan, Guillermo Ciupiak, Faiyez Dean, and the Defendant participated in a stock "pump and dump" that yielded approximately $34 million in illicit profits, of which $17 million was wired to overseas bank accounts. To execute this stock manipulation scheme, the Defendant and other co-conspirators fassisted Abellan in concealing his ownership of a controlling interest in a company called Entertainment Art, Inc. (Entertainment Art) (stock symbol EERT), by placing the shares in accounts nominally owned by Argentinian associates of Abellan. Then, while concealing Abellan's control of EERT, the Defendant, at Abellan's direction induced executives of a German-based biotech company, Opsolution to agree to a reverse merger with EERT. This reverse merger resulted in the creation of a publicly traded company called Biozoom (stock symbol BIZM) in April 2013.

In the course of arranging the reverse merger, the Defendant obtained the German company's confidential business plan and financial projections. The Defendant then provided that information to Abellan and others, who used it to create misleading marketing materials for Biozoom's promotional mailing campaign. The promotional campaign was conducted without the knowledge or authorization of the German executives, the purported owners of Biozoom. Moreover, the marketing materials were created by Abellan and others and contained false and misleading information which induced victim investors to purchase Biozoom stock at an artificially inflated price when it began publicly trading. The false and misleading promotional campaign succeeded in elevating the price of Biozoom stock, thereby allowing Abellan to sell the shares he held in the nominee accounts at a substantial profit of approximately $34 million. Victim investors losses were approximately $18 million.

In addition to coordinating the reverse merger and the promotional campaign for Biozoom, the Defendant also furthered the conspiracy by introducing his coconspirators to U.S. brokerage firms, which resulted in accounts being opened in the names of the Argentine nominees and EERT shares being deposited into those accounts. In connection with the deposit of the EERT shares at a New York brokerage firm, the Defendant and Dean arranged for the issuance of an opinion letter falsely declaring the shares were not required to bear a restrictive legend and could be sold without registration. In addition, at the direction of Abellan and with the assistance of Ciupiak and Dean, the Defendant provided documentation to open accounts at brokerage firms in California and Arizona. And, later, when the nominee shareholders were unable to clear shares at the California firm, the Defendant, with the assistance of Dean, arranged for the shares to be deposited in accounts at an Arizona brokerage firm, where they ultimately were traded. The Defendant also arranged for the Arizona firm to make a policy exception that allowed for trades in the nominee accounts to be made via instant messaging (IM). The ability to give trade instructions via IM allowed the conspirators to hide the fact that Abellan was actually directing the trades in the nominee accounts from his office in Spain.

## GUIDELINES CALCULATIONS

The Presentence Investigation Report ("PSR") recommends that the Total United States Sentencing Guidelines ("USSG" or "Guidelines") Offense Level for Panther is 29. The United States concurs with the enhancements contained in the PSR, which also were outlined in the plea agreement but has moved for a downward departure as follows:

1. Base Offense Level, §2B1.1(a)(1)                          7
2. Loss, §2B1.1(b)(1)(L)                                    +22
3. Ten or more victims, §2B1.1(b)(2)(A)(i)                   +2

| | | |
|---|---|---|
| 4. | Scheme committed outside United States, §2B1.1(b)(10)(B) | +2 |
| 5. | Acceptance of Responsibility, §3E1.1(a)-(b) | -3 |
| 6. | 74% downward departure pursuant to Section 5K1. | 29 x 74% |
| **TOTAL OFFENSE LEVEL** | | **8** |

### SENTENCING FACTORS

Title 18, United States Code, Section 3553(a), enumerates several factors that the Court shall consider in sentencing the Defendant. As discussed below, applying these factors, a probationary sentence is warranted.

**(1) The nature and circumstances of the offense and the history and characteristics of the Defendant**

The stock manipulation scheme in this case was far-reaching and resulted in significant losses to investor victims. However, the architect of the scheme was Abellan. the Defendant's conduct did facilitate the fraud in important ways, there was no arrangement or agreement for him to receive any profits from the scheme. Moreover, there is no evidence that when the Defendant was originally hired that he was aware of Abellan's plan. While he failed to renounce or exit the conspiracy, there is no evidence he stood to receive the illicit profits. Indeed, the only funds the Defendant received was approximately $40,000 for his work as a consultant on the reverse merger.

The nature of the Defendant weighs in favor of the reduction. Apart from a reckless driving conviction a decade prior to this offense, the Defendant has had no contacts with the criminal justice system apart from this case. He has regained employment during his presentence release and has been in full compliance with the terms of his release. He is well-educated and has a family he supports. He has accrued significant debt as a result of his involvement in this case and the companion SEC case, which have lasted a decade. A

probationary sentence will allow the Defendant to continue to work, pay down his debt and support his family.

> **(2) The need for the sentenced imposed (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence; (C) to protect the public from further crimes of the Defendant; and (D) to provide the Defendant with appropriate education or vocational training.**

Defendant's punishment should take into account not only the seriousness of his criminal conduct, which is described above, but also the need to deter future criminals from committing such large-scale securities fraud.  Here, however, it should balance those factors against the Defendant's substantial assistance to the government. In this case, the Defendant has met with the government on numerous occasions and provided the government with key evidence against Abellan and other co-conspirators.  He remains willing to testify at trial. Moreover, while a sentence should take into consideration whether the punishment is necessarily to protect the public from the Defendant in the future, in this case, there does not appear to be a risk of recidivism.  As noted above, the Defendant is well-educated, gainfully employed and supports his family.   His performance on pre-sentence release also demonstrates that he can be a productive and law-abiding citizen who can make a positive contribution to society and support his family. A sentence of incarceration would have a negative impact on the Defendant's ability to repay the substantial debts he has incurred as a result of his conduct and impair his ability to support his family.

**(3)  The kinds of sentence available.**

While convictions of conspiracy to defraud the United States under18 U.S.C. § 371 carry a maximum penalty of five years, the government's requested downward departure would allow for probation.

**(4) The sentencing range established by the USSG.**

- 5 -

Applying the 74% reduction for substantial assistance the sentencing range for a Total Offense category 8 is 0-6 months incarceration and permits a probationary sentence.

**(5) Any pertinent policy statement issued by the USSG.**

The government is unaware of any pertinent policy statement issued by the USSG.

**(6) The need to avoid unwarranted sentencing disparities among Defendants with similar records**

The sentence recommended is reasonable in comparison to the sentences of other individuals prosecuted in the District of Arizona who have entered a guilty plea in similar types of crimes and who have provided substantial assistance to the United States.

**(7) The need to provide restitution.**

Defendant should be ordered to pay restitution in the amount of at least $2,480,793.00, which represents the remaining amount of unpaid victim investor claims, jointly and severally with his co-conspirators. The government is in the process of attempting to repatriate certain funds that will be used for restitution and therefore would request a restitution hearing be scheduled at a later date to determine what, if any, remaining restitution is outstanding. [1]

---

[1] The fund administrator in the related SEC case reported 2602 claimants and $18,747,151 in claimed losses. As of the date of the sentencing, the administrator has paid those claimants $16,266,358.00. The $2,480,793.00 represents the amount of fund claims outstanding. As a result of the government's victim notifications in this matter, we have received additional claims and are in the process of obtaining and verifying appropriate documentation of those claims.

## SENTENCING RECOMMENDATION

Based on all of the sentencing factors addressed above and the Defendant's substantial assistance to the government, the United States recommends a sentence of probation, with a three-year term of supervised release, and an order requiring restitution jointly and severally with his co-conspirators in the amount to be determined at a restitution hearing scheduled by the Court.

Respectfully submitted,

GLENN S. LEON
Chief
United States Department of Justice
Criminal Division, Fraud Section

By:   /s/ D. Brittain Shaw
D. Brittain Shaw
Trial Attorney
DC Bar No. 472990
Criminal Division, Fraud Section
1400 New York Ave. NW
Washington, DC 20005
Tel: (202) 538-4256

## CERTIFICATE OF SERVICE

I certify that on May 4, 2023, I electronically transmitted the attached document to the Master Sealed Event Email, phxcoopseal@azd.uscourts.gov for filing and emailed a copy to the following CM/ECF registrants:

Andrea Tazioli
*Counsel for James Panther*

Corrine Underwood
*U.S. Probation*